UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT M-G McCOY,

          Plaintiff,          Civil Action No. 20-11345

v.                                     Terrence G. Berg
                                     United States District Judge

DONALD SMITH, ROBERT         David R. Grand
STIDHAM, RILEY DESNOYER,     United States Magistrate Judge
TERRELL WILLIS, JULIE,
BRIDGEWATER, and JASON FLYNN,

          Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 33)**

On April 23, 2020, *pro se* plaintiff Robert M-G McCoy ("McCoy"), an incarcerated person, filed this civil rights action pursuant to 42 U.S.C. § 1983, against six employees of the Michigan Department of Corrections ("MDOC").[1] (ECF No. 1). An Order of Reference was entered on May 10, 2021, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 25).

On August 2, 2021, MDOC employees Donald Smith, Robert Stidham, Riley Desnoyer, Terrell Willis, Julie Bridgewater, and Jason Flynn (collectively "Defendants")

---

[1] McCoy had sued three additional individuals/entities, but on July 22, 2020, the Honorable Terrence G. Berg issued and Opinion and Order Partially Dismissing McCoy's Complaint as to the MDOC, Heidi Washington, and Joseph Barrett. (ECF No. 9). Thus, only six defendants remain.

filed a Motion for Summary Judgment on the Basis of Exhaustion.[2] (ECF No. 33). McCoy filed a response to this motion on August 25, 2021 (ECF No. 35), and Defendants filed a reply on September 22, 2021 (ECF No. 36). On October 14, 2021, McCoy, without seeking or obtaining leave of Court, filed a sur-reply. (ECF No. 37).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I.  **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 33)** be **GRANTED**.

II. **REPORT**

A.  **Background**

McCoy is a MDOC prisoner who is currently confined at the Cooper Street Correctional Facility ("JCS") in Jackson, Michigan. His sole remaining claim stems from events that began when his cell was searched on April 28, 2018, by some of the named defendants, most of whom are corrections officers. These officers claimed that they found contraband (Suboxone) in McCoy's possession inside of his state-issued coat. McCoy claims the defendants tore his coat while searching for alleged contraband. Ultimately, McCoy was placed in administrative segregation, and Class I (substance abuse) and Class

---

[2] Although Willis has not yet been served, Defendants assert that their arguments apply equally to him. (ECF No. 33, PageID.252).

II (destruction or misuse of property) misconduct tickets were issued against him. After a misconduct hearing – which began on May 7, 2018, was adjourned, and resumed on May 18, 2018 – McCoy was found not guilty of the charges against him.

McCoy's sole remaining claim against the defendants is for malicious prosecution. This claim relates to his allegation that, on May 2, 2018, while his MDOC misconduct proceedings were pending, Defendant Smith contacted a detective from the Michigan State Police and asked the detective to initiate criminal charges against McCoy. (ECF No. 1, PageID.11). McCoy further alleges that, although he was found not guilty of the misconduct in May 2018, criminal charges were filed against him in August 2018 by the Jackson County Prosecutor based on the allegedly false reports written by Smith and the other defendants. (*Id.*, PageID.12). McCoy further alleges that two of the named defendants – Lieutenant Smith and Corrections Officer Stidham – committed perjury at the preliminary examination in his criminal case in October 2018. (*Id.*, PageID.13-14). Ultimately, the Jackson County Prosecutor dismissed the criminal charges in the interest of justice on May 24, 2019. (*Id.*, PageID.16).

In their motion, Defendants argue that summary judgment is appropriate on McCoy's malicious prosecution claim because he failed to properly exhaust any grievances against them stemming from these allegations. The Court agrees.

B.  **Standard of Review**

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty.*

3

*Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

        *1.*    *The PLRA's Exhaustion Requirement*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action, "under [§ 1983] or any other Federal law," with respect to prison conditions until

all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

2. *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 33-2). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ B). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.* at ¶¶ P, V). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II

5

Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ BB). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ FF). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ B).

> 3. *McCoy Fails to Raise a Material Question of Fact as to Whether He Exhausted His Malicious Prosecution Claim Against Defendants*

In their motion, Defendants argue that McCoy did not properly exhaust his malicious prosecution claim against them because he did not file a grievance related to the events at issue in this case. (ECF No. 33, PageID.261-63). Defendants attach to their motion a copy of McCoy's "MDOC Prisoner Step III Grievance Report," and its underlying grievance documents, which show that he pursued only one grievance to Step III while at JCS, which was initiated two years after the events in this lawsuit took place and which does not relate in any way to his malicious prosecution allegations against Defendants. (ECF No. 33-3). McCoy does not argue that this grievance relates to the issues before the Court in this lawsuit.

Rather, in his response to Defendants' motion, McCoy makes two arguments. First, he claims that he filed a grievance stemming from the conduct that occurred on April 28, 2018 (Grievance No. JCS-18-05-315-27a ("JCS-315")), and that grievance was "returned to [him] without processing" because it contained "nongrievable" issues. (ECF No. 35, PageID.354, 361-63). But, JCS-315 does not relate to the malicious prosecution

6

allegations at issue in this lawsuit; rather, it relates to Defendant Bridgewater's alleged seizure of his personal property (34 magazines) without following proper protocol. (*Id.*, PageID.361).

McCoy also argues that he could not have grieved Defendants' actions, pointing to a portion of the Policy[3] that specifically provides that "[d]ecisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules … [and] minor misconduct hearings" are "non-grievable issues" that "shall be rejected" by the grievance coordinator." (ECF No. 30-2, PageID.134, ¶ F; ECF No. 37, PageID.386 ("the issue is not permitted to be grieved since it was involving a misconduct and hearing . . .")). Indeed, Defendants concede that, regarding prison misconduct tickets, "the district courts in Michigan have recognized that 'decisions made in the prison hearings division are non-grievable.'"[4] (ECF No. 33, PageID.260) (quoting *Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019)). Instead, in such situations, a plaintiff is required to file a motion or application for rehearing in order to exhaust his administrative remedies before seeking judicial review of the final decision or order. *See*

---

[3] McCoy cites to Section J(9) of the March 18, 2019 version of Policy Directive 03.02.130. (ECF No. 35, PageID.354). Because the events at issue occurred prior to that date, however, the 2007 version of the Policy applies. Regardless, for purposes of this analysis, the policies are the same. (ECF No. 33-2, PageID.268; No. 35, PageID.367; *see also infra* at 8).

[4] Moreover, when a prisoner claims that a prison official issued him a misconduct ticket for a retaliatory purpose, the prisoner must raise that claim during the first misconduct hearing, or he cannot use such a claim to request a rehearing. *See Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011); *see also Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. Jul. 24, 2017) (finding a plaintiff's claim alleging a retaliatory misconduct ticket was not properly exhausted according to MDOC procedures where he did not allege retaliation at his misconduct hearing).

MCL § 791.255(1). The prisoner must make the rehearing request within thirty days after the final decision or order is issued. *See Ayotte*, 2019 WL 2219739, at *5.

In this case, however, McCoy's argument that he could not grieve the issue before the Court – because it is related to the misconduct hearing process – is based on a mischaracterization of his instant malicious prosecution claim. While it is true that the MDOC's Policy provides that a prisoner may not "griev[e] a decision made in a Class II or Class III misconduct hearing, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements, timeliness of misconduct review, timeliness of hearing)," McCoy's claim in this case is not about the Class I or Class II *MDOC* misconduct tickets he received. (ECF No. 33-2, PageID.268). Rather, McCoy is alleging that Defendants engaged in *separate conduct* that resulted in him facing criminal charges *in state court*. (ECF No. 35, PageID.355) ("The specific conduct which motivated the Plaintiff into learning how to file a Civil Action and presenting the issues that created this specific 'Cause of Action,' was the overwhelming MDOC staff that chose to use falsified documents in its collection and turn them over to the Michigan State Police, for criminal prosecution.") (emphasis added). McCoy further alleges that, in October 2018, Defendants Smith and Stidham "chose to testify at the [state court] Probable Cause hearing … under falsehoods and commit perjury …." (*Id.*). Thus, McCoy's assertion that he was unable to file a grievance about facts underlying his malicious prosecution claim is simply incorrect.

To be clear, this is hardly a technical distinction. The purpose of the grievance process is to allow the MDOC to investigate the issue complained about and try to correct

8

it. *Woodford*, 548 U.S. at 89. The MDOC has an opportunity to address issues regarding misconduct tickets as part of its own internal misconduct hearing process, thus obviating the need for the grievance process as to those issues. However, the only way the MDOC could have known about and investigated the specific claim McCoy now makes was if he had filed a grievance raising his allegations. Thus, it is appropriate to interpret the Policy as having required McCoy to file a grievance and pursue it through the MDOC's three-step process in order to exhaust this claim. Since McCoy has come forward with no evidence that he filed a grievance regarding the specific malicious prosecution claim he asserts in this case, he has failed to raise a material question of fact as to whether he properly exhausted his remaining claim against Defendants.[5] Thus, Defendants' motion for summary judgment should be granted.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment on the Basis of Exhaustion **(ECF No. 33)** be **GRANTED**, and that

---

[5] McCoy asserts that his malicious prosecution claim could not be exhausted through the grievance process because it does "not involve any conditions of confinement" within the MDOC or JCS. (ECF No. 35, PageID.358; ECF No. 37, PageID.386). Indeed, he maintains that the perjury committed by Defendants Smith and Stidham "was committed outside of the MDOC confinement." (ECF No. 35, PageID.357). But, MDOC policy provides that a prisoner's misconduct that also is a felony shall be referred to the appropriate law enforcement agency, as well as pursued through the MDOC disciplinary process. (ECF No. 33-6, PageID.331). Here, then, where Defendants' alleged conduct in contacting the Michigan State Police and cooperating with the Jackson County Prosecutor was at least facially consistent with formal MDOC policy, their actions did in fact involve prison conditions. Thus, McCoy was required to file a grievance challenging Defendants' alleged malicious prosecution before bringing suit in federal court. *See Tucker v. Connor*, No. 2:19-cv-00175, 2020 WL 6731465, at *3 (W.D. Mich. July 24, 2020) ("A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.").

this case be **DISMISSED**.

Dated: October 25, 2021         s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 25, 2021.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager